IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 2:11-cr-240-01-JDW |
| v. | : | |
| OCTAVIO BAEZ | : | |

**MEMORANDUM**

Octavio Baez seeks to end his term of supervised release early. Although I conclude under that his plea agreement permits him to seek that relief, I will not grant it to him because he has not shown that the interests of justice require such a change.

**I.     BACKGROUND**

On November 22, 2011, Mr. Baez pled guilty to one count of conspiracy to distribute controlled substances, one count of possession with intent to distribute controlled substances, one count of possession of a firearm in furtherance of a drug trafficking crime, and two counts of money laundering. In connection with that plea, Mr. Baez signed an agreement with the Government stating, in relevant part, that he "voluntarily and expressly waives all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 29 U.S.C. § 2255, or any other provision of law." (ECF No. 39 at 10-11.)

On September 23, 2013, Judge Jones sentenced Mr. Baez to 150 months of incarceration, to be followed by five years of supervised release.[1] On February 23, 2016, Judge Jones reduced Mr. Baez's term of imprisonment to 126 months pursuant to Amendment 782 to the U.S. Sentencing Guidelines. Mr. Baez served his term in prison, and on September 17, 2020, he began his term of supervised release. As a condition of his supervised release, Mr. Baez may not "leave the judicial district without the permission of the court or probation officer." (ECF No. 87 at 3.) Twice, he has asked for and received permission to travel to the Dominican Republic. (*See* ECF Nos. 103, 105.)

Now, with roughly twenty months remaining in his term, Mr. Baez has filed a Motion for Early Termination of Supervised Release Pursuant to 18 U.S.C. § 3583(e)(1). He submits that he is a reformed, law-abiding citizen who has fully complied with the terms of his supervised release. He seeks termination to visit his ailing father in the Dominican Republic without prior authorization. The Government opposes Mr. Baez's Motion, and it is ripe for disposition.

II.     **LEGAL STANDARD**

Pursuant to 18 U.S.C. § 3583(e)(1), a court may terminate a term of supervised release prior to its expiration. In doing so, the court must consider the following 18 U.S.C. § 3553(a) factors:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct,

---

1

protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012). After evaluating those factors, a court may terminate supervised relief only if it is satisfied that "the defendant's conduct and the interest of justice" warrant an early termination. 18 U.S.C. § 3583(e). There need not be an exceptional circumstance presented to grant a defendant's motion. *Melvin*, 978 F.3d at 53. The statute confers "broad discretion" on a court in making this determination. *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014).

## III.   ANALYSIS

### A.   Waiver

The Government argues that Mr. Baez waived his right to file this Motion. As a result, I must analyze the terms of his plea agreement waiver. *See United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008). "Plea agreements, although arising in a criminal context, are analyzed under contract law standards." *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998). What matters is the "plain meaning" of the agreement. *United States v. Davenport*, 775 F.3d 605, 609 (3d Cir. 2015). Ambiguities or doubts as to the agreement are held against the Government. *See id.* A valid waiver of appeal is

3

enforceable unless it would amount to a miscarriage in justice. *See United States v. Khattak*, 273 F.3d 557, 558 (3d Cir. 2001).

The terms of Mr. Baez's plea agreement don't preclude him from filing this motion. Mr. Baez waived his right to file an "appeal" or "collateral[] attack." (ECF No. 39 at 10-11.) The Motion is not an appeal because I am not in the position of a higher court reviewing a lower court's decision. *See* Appeal, Black's Law Dictionary (9th ed. 2009). A motion to terminate supervised release is also not a collateral attack. *See United States v. Tarboro*, No. CR 08-323-01, 2023 WL 3821812, at *2 (E.D. Pa. June 5, 2023) (citing *United States v. Crews*, No. CR 10-663-5, 2020 WL 6581430, at *2 (E.D. Pa. Nov. 10, 2020)). A collateral attack is "[a]n attack on a judgment in a proceeding other than a direct appeal; esp., an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective." Collateral Attack, Black's Law Dictionary (9th ed. 2009). A paradigmatic example is a petition for *habeas corpus*. *See id.* Mr. Baez's Motion is dissimilar from conventional examples of collateral attacks because it doesn't "complain about the substance of, or proceedings that determined, a defendant's original sentence or conviction." *United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) (declining to classify a motion to modify a sentence pursuant to 18 U.S.C. § 3582(c)(2) as a collateral attack). Other judges in this district analyzing identical plea agreements have reached the same conclusion. *See,*

e.g., *United States v. Mabry*, 528 F. Supp. 3d 349, 356 (E.D. Pa. 2021); *United States v. Fluellen*, No. CR 09-497-1, 2022 WL 309159, at *5 (E.D. Pa. Feb. 2, 2022).

I acknowledge that there are judges in this District who have held the opposite. *See Fluellen*, 2022 WL 309159, at *5. I don't find those analyses convincing. They rely on an unpublished Third Circuit decision finding waiver under an identical agreement when a defendant sought to shorten the term of his supervised release. *See, e.g.*, *United States v. Clark*, No. CV 06-205-7, 2021 WL 3737195, at *4 (E.D. Pa. Aug. 24, 2021) (analyzing *United States v. Oyerinde*, 784 F. App'x 111 (3d Cir. 2019)). Respectfully, I disagree with those decisions, none of which is controlling. I find the Tenth Circuit's reasoning in *Chavelz-Salais* more persuasive. A defendant like Mr. Baez, who cites new developments such as his readjustment to society, does not attack the sentence itself. He invokes a statutory right to seek a modification of the sentence. The distinction is subtle but important.

Had the plea agreement stated that Mr. Baez waived his right to file "any appeal, any collateral attack, *or any other writ or motion* … which challenges [his sentence]," then the result may have been different. *United States v. Damon*, 933 F.3d 269, 271 (3d Cir. 2019) (emphasis added). But that's not what Mr. Baez' agreement so states. "[T]he only question is whether the motion is an appeal, a collateral attack, or neither." *Fluellen*, 2022 WL 309159, at *5 (internal quotation and citation omitted). It is neither, so the waiver does not apply. To the extent there's any question about that, it renders the plea agreement

5

ambiguous. I construe that ambiguity against the Government because it means that Mr. Baez did not make a knowing and intelligent waiver of his right to seek relief under Section 2582(c)(2).

## B. Merits

Upon consideration of all the required factors under § 3583(e)(1), I decline to exercise my discretion to terminate Mr. Baez's supervised release early. I explain my findings for the most pertinent of these factors.

The Government and Mr. Baez's Probation Officer object to the Motion primarily on the first factor, highlighting the complexity of underlying drug conspiracy. The conspiracy involved large quantities of dangerous substances, firearms, and money laundering. At the same time, I note that Mr. Baez did not have a criminal history before the offense for which he pled guilty and has now reformed his life.

As to the second factor, there's little need to deter Mr. Baez from criminal conduct, protect the public, or provide him with the footing he needs to restart his life. By all accounts, Mr. Baez is a changed man. He holds stable employment and lives with his family. He has complied with the terms of his supervised release for the past forty or so months and has paid off his court costs in full. The primary purpose of supervised release, reintegration into society, has largely been met. *See United States v. Murray*, 692 F.3d 273, 280–81 (3d Cir. 2012).

While I commend Mr. Baez's post-incarceration conduct, I do not find his compliance alone enough to warrant early termination. When a judge includes supervised release in a sentence, the baseline expectation is that a defendant will comply with the terms. That compliance is not enough, on its own, to earn a reward like early termination of supervised release. Were it otherwise, then the exception would swallow the rule. *See United States v. Brodie*, No. 1:18-CR-0162-NLH-1, 2024 WL 195250, at *6 (D.N.J. Jan. 18, 2024) (collecting cases finding bare compliance insufficient). As Mr. Baez sees it, he has outgrown the need for such supervision. But it is just as possible that the terms of Mr. Baez's supervised release serve as the scaffolding that has facilitated his reintegration into the community. The level of supervision exerted on Mr. Baez is proportionate to his good behavior. He reports to his Probation Officer monthly via an online portal. Mr. Baez does not argue that these check-ins are onerous or otherwise impede his ability to reform his life.

I understand Mr. Baez's obligation and desire to visit his ailing father in the Dominican Republic without prior authorization. But Mr. Baez hasn't shown that his supervised release impedes that. He's twice asked for leave to travel, and he got it in short order. And even if the travel-related restrictions were burdensome, the remedy would be to seek a modification of the travel restrictions, not a termination of supervision in its entirety.

As to the third and fifth factors, Mr. Baez hasn't submitted anything to suggest that finishing his term would be inconsistent with the kind of sentence established for his crimes or work a disparity to him compared to similarly situated defendants. Neither side points to the sixth factor, the need to provide restitution to victims, as applicable in this case.

## IV.     CONCLUSION

I laud the positive changes that Mr. Baez has made to his life. The remainder of his term of supervised release serves as a safety net to ensure that he stays on this commendable course. He has not shown that I should terminate that term early .I will therefore deny Mr. Baez's Motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 23, 2024